## FIRST NATIONAL BANK OF GOODHUE v. VILLAGE OF GOODHUE.[1]

January 24, 1913.

Nos. 17,888—(153).

**Municipal contract — recovery of money.**

Where a municipal corporation receives money or property of another under and pursuant to a contract upon a subject within its corporate powers, which contract was entered into in good faith and without purpose to violate or evade the law, but for the failure to comply with the requirements of statutes made essential to a valid contract was illegal and void, and the money or property so received is retained and subsequently devoted to legitimate municipal purposes, the municipality is liable therefor, and recovery may be had against it as upon an implied contract.

**Same.**

Where a bank in good faith loans money to a municipal corporation for a legitimate corporate purpose, and the money so loaned is paid into the municipal treasury and subsequently expended for the purpose stated, recovery may be had against the municipality for a return of the money, though the contract was void because the president of the municipal council was also a managing officer of the bank, and participated in the council proceedings by which the loan was authorized.

Action in the district court for Goodhue county to recover $2,800 upon two causes of action. The complaint alleged that defendant, representing to plaintiff and plaintiff in good faith believing that

[1] Reported in 139 N. W. 599.

---

Note.—As to the liabilty of municipality or other public corporation on implied contract, see notes in 27 L.R.A.(N.S.) 1117 and 41 L.R.A.(N.S.) 473.

the money was to be used by defendant village for legitimate and proper municipal uses, borrowed money, averred that the same was used for village purposes, set out the warrants mentioned in the opinion, and alleged that they were issued without authority of law but were brought into court to be surrendered.

The answer among other matters alleged that the person who signed the warrants mentioned in the complaint as president of the council was an officer and president of the plaintiff, and as president of the village council was prohibited by law from procuring any loan of money from plaintiff for defendant and prohibited from loaning any money to defendant; that he was guilty of a crime in being interested in obtaining such pretended loan or in entering into any contract for the loan, and plaintiff was forbidden to loan any such money to defendant, all of which was well known to plaintiff and its officers at the time of such pretended loans and of such warrants. The answer also averred that the officers of defendant village by the laws of the state were prohibited, without first obtaining authority so to do from five-eighths of the legal voters, voting at a special or general election for the purpose, to incur any indebtedness or borrow any money; that the voters of the village were never given an opportunity to approve or reject the incurring of the indebtedness or loans, and no election was held for that purpose, although a large number of such voters to the knowledge of plaintiff requested the village council and its president to submit the question to the voters before such loans were made.

The reply alleged that the person named as president of the village council had no interest in the construction of the fire hall and jail for defendant, in no manner influenced any of his fellow members of the council to borrow money, and acted solely therein as directed by the council and was not in any manner directly or indirectly connected with the plaintiff at the time of the second loan.

The case was tried before Hodgson, J., who made findings and ordered judgment in favor of plaintiff. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*Mohn & Mohn,* for appellant.

*F. M. Wilson,* for respondent.

BROWN, C. J.

Plaintiff is a banking corporation organized and existing under the laws of the United States, the defendant a municipal corporation duly organized under the general laws of this state. In October, 1909, defendant, through its common council by proper action taken, determined to purchase a site for and erect thereon a fire and jail building for the use of the village. The village was without funds available for the purpose, and on October 9, 1909, the council by resolution directed the president of the council and village clerk to borrow from plaintiff the sum of $1,000, and to issue therefor a village warrant for its repayment. That sum of money was insufficient to complete the building, and the council in November of the same year authorized a second loan of $1,800. Plaintiff paid the total amount to the village treasurer, and the whole thereof was subsequently used and expended in the purchase of the site and the erection of the building thereon. The trial court found that plaintiff loaned the money to the village in good faith, and that the same was expended as just stated. Both transactions were illegal and void for the reason that the village council was not authorized to make such a loan of money without first submitting the question to the legal voters for their approval. The question was not so submitted as to either loan. The first loan was illegal and void for the further reason that the president of the village council, who as such participated in the transaction, was also a managing officer of plaintiff bank, and was prohibited by law from entering into any contract with the village in which his bank was interested. Section 731, R. L. 1905.

Plaintiff brought this action to recover the amount so loaned, having first demanded repayment, on the ground of money had and received. Plaintiff conceded in its complaint the invalidity of the warrants, and they were brought into court for the use of defendant, and the action is predicated, not upon the contract, but upon the alleged implied obligation of the village to repay the money. The trial court ordered judgment for plaintiff, and defendant appealed from an order denying a new trial.

The only question presented is whether, on the facts stated, which are not in dispute, an action will lie for money had and received; or,

as otherwise expressed, whether a municipal corporation is liable in assumpsit upon an implied contract to pay for what it has received, where the express contract pursuant to which it received the same is invalid because of the failure of its officers to comply with statutory requirements.

1. The courts are in full harmony in holding that one who deals with a municipal corporation in respect to a matter beyond its corporate powers can have no relief either in law or in equity. Contracts so entered into are wholly void, because prohibited, of which all are required to take notice. But there is a sharp conflict in the adjudicated cases upon the question of liability where the corporation is vested with power to enter into a particular contract, and its invalidity arises solely from the failure to comply with essential requirements of law. In such cases many courts of high standing hold that the municipality may be compelled to do justice, and recovery is allowed as upon an implied contract to pay for what it has received. Ingersoll, Public Corporations, 297; Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659; Marsh v. Fulton Co. 10 Wall. 676, 19 L. ed. 1040; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. ed. 238; Argenti v. San Francisco, 16 Cal. 256; Pimental v. San Francisco, 21 Cal. 352; Gause v. City (C. C.) 1 Fed. 353; Thomson v. Town, 109 Wis. 589, 85 N. W. 425; Luther v. Wheeler, 73 S. C. 83, 52 S. E. 874, 4 L.R.A.(N.S.) 746, 6 An. Cas. 754; Long v. Borough of Lemoyne, 222 Pa. St. 311, 71 Atl. 211, 21 L.R.A.(N.S.) 474. In short, the "doctrines of assumpsit are applicable to municipalities as well as to natural persons, and the action may be maintained on any of the common counts, 'not from any contract entered into on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial.' " Ingersoll, Public Corporations, 299.

The rule stated has often been applied in cases of borrowed money, where the money has been paid into the municipal treasury, and subsequently expended for legitimate municipal purposes. Fernald v. Gilman (C. C.) 123 Fed. 797, and authorities cited in Ingersoll, Public Corporations, supra.

The opposite view of the question proceeds upon the theory that to

permit a recovery in such cases results for all practical purposes to upholding the invalid contract, thus enabling the municipality to do indirectly that which it could not do directly. The courts so holding apply the doctrine of ultra vires strictly, and refuse relief where the contract was entered into irregularly or in violation of law, as well as where the subject-matter was beyond the power of the corporation. The question on facts precisely like those here disclosed has never been presented to this court, though in analogous cases, the tendency of our later decisions has been in harmony with the rule of liability applied by the authorities cited.

In this case the money was loaned to the municipality by plaintiff in good faith, it was paid into the village treasury, and subsequently expended for a purpose authorized by law. The forms of law were not complied with in effecting the loan, and the contract was invalid for that reason. Yet the village received the money, and ought in equity and good conscience to return it. And, though we have held that the doctrine of ultra vires is applied to municipal corporations with greater strictness than to private corporations, the doctrine really has no application to the case. If the question was whether the contract was valid, the decision necessarily would be that it was not. This action proceeds upon that theory. In that view the express contract disappears, because unauthorized and the rule of implied liability takes its place.

We are unable to assign a good reason for differentiating between the private and the municipal corporations as respects the rule of justice and common honesty. The private corporation in a case of this kind would not be heard to dispute its liability, nor should a public corporation be permitted to do so where, as in the case at bar, there is no question of fraud or collusion, and no concerted purpose between the village officers and plaintiff intentionally to evade or violate the law.

A situation of that kind would present a question of fraud, and, both parties being participants, the courts would probably decline to aid either. The finding of good faith in this case negatives any such situation. Though defendant at one stage of the trial offered some evidence tending to show that the question whether the loan

could probably be made without a favorable vote of the people was brought before the council, yet the evidence offered fell short of disclosing a fraudulent purpose intentionally to evade the law, and the ruling of the court excluding it is not assigned as error. So that whether such a purpose participated in by both parties, the city authorities and the other contracting party, would present a case of non-liability, we need not determine.

As heretofore stated, our later decisions on principle sustain the rule of liability on facts like those here presented. Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990, 33 L.R.A. 199; Village of Pillager v. Hewett, 98 Minn. 265, 107 N. W. 815; Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91; Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644; White v. City of Chatfield, 116 Minn. 371, 133 N. W. 962. We follow and apply the rule adopted in these cases, and hold, on the facts found by the trial court, defendant liable as upon an implied promise to repay the money. The case is distinguished from Young v. School District, 54 Minn. 385, 55 N. W. 1112, 40 Am. St. 340, for the reason given in Kreatz v. St. Cloud School District, 79 Minn. 14, 81 N. W. 533.

2. The fact that the first loan in the case at bar was void for the additional reason that an officer of plaintiff was also a member of the village council furnishes, in our judgment, no sufficient reason for differentiating that form of illegality from that of a failure to submit the question to popular vote. The difference between the two situations is one of degree, and the rule ought to apply equally to both. The foundation of the rule is found in the fact that the municipality has received money or property for a legitimate municipal purpose for which equity and good conscience require payment. Currie v. School-District, 35 Minn. 163, 27 N. W. 922; Diver v. Bank, 126 Iowa, 691, 102 N. W. 542, 3 An. Cas. 669; Kagy v. School District, 117 Iowa, 694, 89 N. W. 972; Grand Island Gas Co. v. West, 28 Neb. 852, 45 N. W. 242; Mayer v. Huff, 60 Ga. 221. The courts are divided upon this question. Note to 27 L.R.A.(N.S.) 1117.

The case of Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 Am.

St. 506, involved services rendered, and is not here in point, though
some of the courts uphold the right of recovery even in that class of
cases. 27 L.R.A.(N.S.) supra.

Order affirmed.