STARK COUNTY, a Municipal Corporation, Appellant, v. THE
CITY OF DICKINSON, a Municipal Corporation, Respondent.
A. S. WARD, Auditor of Stark County North Dakota, et al.,
Garnishees.

(— A.L.R. —, 217 N. W. 525.)

**Municipal corporations — doctrine of assumpsit applies to cities — county
may recover money advanced to city for improvement without contract.**

The doctrine of assumpsit is applicable to cities and where a city, acting in a
matter within its corporate powers, undertakes a municipal improvement and en-
ters into an agreement with another by the terms of which this second party is
to advance money to the city for such improvement upon the agreement by the
city to repay the second- party when the improvement is completed and money
obtained therefor; and the second party, in reliance upon this promise of the
city, in good faith and with no intent to evade the law, advances the money by
paying a portion of the cost of such improvement, and the improvement is com-
pleted and used by the city and all conditions are fulfilled, recovery may be had
of the city, even though the city may have failed to execute a valid contract
respecting this improvement by failing to comply with the statutory requirement
essential to a valid contract respecting such undertaking.

Opinion filed January 16, 1928. Rehearing denied January 31, 1928.

Municipal Corporations, 44 C. J. § 2247 p. 137 n. 91.

Appeal from an order of the District Court of Stark County sus-
taining an objection to the introduction of testimony, and the judgment
entered thereon. *Lembke, J.*

Reversed.

*Crawford, Cain & Burnett,* for appellant.

"The action for money had and received is permitted on equitable
principles. Such action may be maintained whenever one person has
received or has in his possession money of another which he is not in
equity and good conscience entitled to retain." Ogren v. Crystal
Springs School Dist. 52 N. D. 455, 203 N. W. 324.

"The presumption is that public officials do as the law and their duty

Note.—On application of doctrine of assumpsit to municipal corporations, see
annotation in 15 L.R.A.(N.S.) 567; 2 R. C. L. 792, 793.

require them." Greenfield School Dist. v. Hannaford School Dist. 20 N. D. 393, 127 N. W. 499.

"A municipal corporation impliedly contracts to cause a valid assessment to be made when it enters into a contract for a street improvement which is to be paid for by special assessment and that when an assessment is invalid because of some defect in the proceedings which is chargeable to it, the municipal corporation is holden to the contractor." Freese v. Pierre, 37 S. D. 433, 158 N. W. 1013.

"Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received." Roberts v. Omaha (Neb.) 107 N. W. 214.

"Where a paving contractor by reason of wrongful action of city was unable to realize on a special assessment certificate issued to it in payment for work done and interest thereon, he had a right to recover such amount as damages from the city; the city being bound, if not by the written contract, by implied contract, to make a valid assessment." Barber Asphalt Paving Co. v. Des Moines (Iowa) 183 N. W. 456.

"The corporation cannot thus (by neglecting to act) keep its creditors at bay, and then defend itself on the ground that its own officers and agents have not done what it is their duty to do." Commercial Nat. Bank v. Portland (Or.) 33 Pac. 532.

"The liability of the city for negligently failing to raise such fund is one arising ex delicto and not ex contractu, and therefore the city is liable for damages arising therefrom though its limit of indebtedness has been reached." Little v. Portland (Or.) 37 Pac. 911.

A city is primarily liable for improvements to its streets. Ft. Dodge Electric Light & P. Co. v. Ft. Dodge (Iowa) 89 N. W. 7; Allen v. Janesville, 35 Wis. 403.

*Tobias D. Casey*, for respondent.

"The right to lay burdens upon property owners by city tax levy is conditioned by the charter upon the passage of an ordinance which shall specify the special purposes for which the tax to be levied is to be expended, and the specific amount which shall be devoted to each purpose." Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292.

Persons and corporations dealing with the city are presumed to

know the law and if they deal illegally they cannot recover for property risked. Ibid.

"Any person or corporation entering into contractual relations with public corporations or their officers are chargeable with notice of all provisions of the charter of such corporations relating to the subject-matter of their contracts, and are, therefore, presumed to have acted with full knowledge of such charter provisions." Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726.

BURR, J. This case is before us on an objection to the introduction of evidence.

The complaint, summarized alleges "that in the year 1924 the above-named defendant was contemplating paving . . . Villard street . . . and the advisability of securing state and Federal aid . . . was discussed; . . . defendant having learned that it would be best for it to obtain state and Federal aid . . . in the approximate sum of $12,000, provided however, it would first have to obtain the consent of plaintiff . . . to request the state highway commission and the Federal government to designate certain Federal aid projects extending in an easterly and westerly direction from the proposed pavement on Villard street, . . . and if the county would make such request and the same be granted, and the county cause the work so requested to be done and paid for by the county, the defendant . . . would receive . . . about $12,000 to apply upon its paving project. . . . In order to obtain said $12,000 Federal aid and state aid it was necessary that said paving project be attached to and made a part of the Federal aid project, etc., . . . and that on or about the 8th day of January 1924, the defendant city by its then officers . . . held a joint meeting with the county commissioners of plaintiff county, and at said meeting requested the commissioners . . . to request the building or grading of the Federal aid projects hereinbefore mentioned with the agreement that if granted the *defendant city would repay to plaintiff county the one fourth share that plaintiff county would be required to expend in behalf of defendant city* for the erection of said Federal aid projects hereinbefore mentioned, all of said work as aforesaid to be done and performed within the city limits of the city of Dickinson, . . . and the plaintiff relying upon the statements and promises of

defendant city and believing the defendant city would, repay to the county of Stark any and all sums it expended in behalf of said city of Dickinson, granted the request of said city, and on or about the said date in writing requested the state highway department . . . to join with said plaintiff county and the Federal government in the building or improvement of a road approximately four miles in length . . . a portion of which was within the city limits of the city, . . . and in said request agreed to pay to the said state highway commission one fourth of the total cost of said project; the other one fourth to be paid by the state of North Dakota; and the remaining one half thereof to be paid by the Federal government. . . . That the city of Dickinson . . . thereafter was allowed on its paving project by the United States government and the state of North Dakota, the approximate sum of $12,000, no part of which sum defendant city would have been entitled to or could have obtained, without the joint action of the commissioners of plaintiff county. . . . That the reasonable value of the work, labor and material . . . within the city limits of the city of Dickinson was and is the sum of $9,219.40. . . . Plaintiff county paid for and in behalf of the city of Dickinson the sum of $2,304.86 which said sum was the reasonable value of the work, labor and material furnished by said county for and in behalf of the defendant city as per the agreement herein set forth. . . . That said projects . . . were fully completed in the year 1926 and were paid for as hereinbefore stated. That . . . the plaintiff . . . requested of the city of Dickinson that it pay to plaintiff county, the moneys which the county had expended for the city of Dickinson within the city limits . . . in the sum of $2,304.86 with interest thereon from the 27th day of November 1926. . . . That thereafter and on or about the 10th day of January 1927, the city commissioners of the city of Dickinson held a joint meeting with the commissioners of Stark county, and at a time long subsequent to the completion of the work mentioned . . . unanimously ratified the acts and action of the said defendant city . . . and unanimously agreed to pay Stark county plaintiff the sum said county had expended for the city of Dickinson as set forth . . . excepting that said city requested permission to meet said payment on or after July 1, 1927. . . . That although duly demanded the city

of Dickinson has not paid to the county of Stark said sum of money or any part thereof. Wherefore, plaintiff demands judgment, etc."

The defendant answered this complaint and when the case came on for trial interposed an objection to the introduction of any testimony on the ground that the complaint does not state facts sufficient to constitute a cause of action.

The demurrer is based on the grounds: "That the complaint does not state that before this improvement was made and this agreement, as alleged, was entered into, the city had appropriated in its annual appropriation bill funds sufficient to carry out this work, . . . that the complaint wholly fails to state, . . . before the agreement or understanding set out in complaint was entered into, that the city of Dickinson in its annual appropriation made an appropriation for this improvement and has set out specifically the amount that could be used for that purpose; . . . that it fails to state that any of these agreements or understandings . . . were made . . . at the place where it says in its charter they shall be made; . . . that it does not state the exact amount that was to be paid to the county by the city, nor does it describe the improvement to be made; . . . that it wholly fails to state any fund out of which the city has appropriated any money for which such improvement could be made; . . . that the improvement mentioned in the complaint is one that a special assessment must be levied for before the city of Dickinson could in any way pay or agree to pay or appropriate any money for to make such improvement; and the complaint wholly fails to state that any special assessment has been made. . . ."

The court sustained the demurrer to the introduction of the evidence, and plaintiff appeals.

The defendant relies upon the decisions of this court in the case of Engstad v. State, 8 N. D. 1, 76 N. W. 292; Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726 and similar decisions where it is held that contracts for public improvements calling for disbursements of public funds and made without following the requirements of the statute are ultra vires and void, and will be enjoined.

It seems to be the theory of the defendant that the plaintiff is seeking to recover on a contract for making an improvement for the city of Dickinson and that such contract is void because under the provisions

of the City Budget Law, being §§ 3684a1 to 3684a13 of the Supp. and specifically § 3684a9, "no municipal expenditure shall be made or liability incurred nor shall a bill be paid, for any purpose in excess of the appropriation made;" or that the complaint is on a contract for the grading and paving of streets, that before such contract could be entered into improvement districts must be made, ordinances adopted and provision made for the creation of the improvement fund out of which the expenses were to be paid. This is not the theory of the complaint nor of the case. The complaint shows that through the good office of the county and because the county advanced money or expended money for the city the city has received approximately the sum of $19,000 from the county, state and Federal government which otherwise it would not have received; that part of this is the sum of $2,304.86, or one-fourth of what the county advanced or expended, and that all of this was received and retained by the city.

This court, in the case of Ogren v. Crystal Springs School Dist. 52 N. D. 455, 203 N. W. 324, said:

"An action for money had and received may be maintained whenever one person has received or has in his possession money of another which he is not in equity and good conscience entitled to retain, and this rule applies as well to municipal corporations, where not contrary to express statute or the policy of the law, as to private corporations or to individuals."

There is no question but what cities have the right to pave streets, make improvements, borrow money, etc. In this case the primary purpose was not illegal. The county commissioners, with good-natured motives, in a spirit of friendly co-operation and with a desire to be of help to a municipal corporation within the county paid out a portion of the expense of paving the city upon the agreement that one fourth of it would be returned from the large portion of the expense donated by the state and Federal government. It is neither immoral, unjust, nor inequitable for the county to ask to have its money returned.

In the case of First Nat. Bank v. Goodhue, 120 Minn. 362, 43 L.R.A. (N.S.) 84, 139 N. W. 599, it is said:

"Where a municipal corporation receives money or property of another under and pursuant to a contract upon a subject within its corporate powers, which contract was entered into in good faith and with-

out purpose to violate or evade the law, but for the failure to comply with the requirements of statutes made essential to a valid contract was illegal and void, and the money or property so received is retained and subsequently devoted to legitimate municipal purposes, the municipality is liable therefor, and recovery may be had against it as upon an implied contract." This was an action where a bank loaned a village $2,800 for the purpose of assisting the village to build a fire house and jail building for the use of the village. The money was loaned in good faith and was used by the city to purchase a site and erect buildings. The court said both transactions were illegal and void for the reason that the village council was not authorized to make such a loan of money without first submitting the question to the legal voters for their approval. This had not been done. The village had the right and power to purchase sites and build fire houses and jail buildings so the project was within the scope of its power though it did not follow the essential requirements of the statute. However it could not be permitted to retain the money, for as stated later in Tracy Cement Tile Co. v. Tracy, 143 Minn. 415, 176 N. W. 189:

"A contract being one which the city had power to make, may be subsequently ratified, . . . and this may be done by acquiescence with knowledge of the facts."

In the case at bar the city acquiesced, ratified by subsequent acts of the commission, received, accepted and retained the money and should be held to the implied contract.

In the case of Fargo Foundry Co. v. Callaway, 148 Minn. 273, 181 N. W. 584, it is said:

"Where a village contracts for a municipal improvement which it has power to make, but the contract is void because not made after competitive bidding as required by law, the village is obliged to pay for any benefits it receives through performance of the contract, not because of the contract, but because of a general obligation to do justice."

In Eaton v. Shiawassee County, 134 C. C. A. 316, 218 Fed. 588, the court says:

"A county may be compelled to return money loaned when the purpose of the loan was lawful and the creation of the debt not prohibited

by law, though the procedure was illegal, but is not liable if it never received the benefit of the money."

In the case of Duntz v. Ames Cemetery Asso. 192 Iowa, 1341, 186 N. W. 443, it was held that cities had the power to purchase land for cemetery purposes and "where under a contract for land to be used for a cemetery which was not ultra vires, although the transfer was irregular, a city had received the land and had entered into control of it, equity will require, independently of an express contract, that the city do justice, and will impose an obligation upon the city in requiring it to pay the portion of the purchase price unpaid by its grantor." This was an action "for an unpaid balance on the purchase price on a land contract and for decree of foreclosure on said contract."

"Although there may be a defect of power in a corporation to make a contract, yet if the contract made by it is not in violation of its charter nor of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in the execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract." Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659.

A city having power to issue bonds may be compelled to pay back the money received for bonds illegally issued when the purpose of the loan was lawful and the creation of the debt not prohibited by law. Louisiana v. Wood, 102 U. S. 294, 26 L. ed. 153. See also Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. ed. 611, 20 Sup. Ct. Rep. 498.

It is claimed the necessary processes were not followed. In Backhaus v. Lee, 49 N. D. 821, 194 N. W. 887, this court quotes with approval from the decisions of the supreme court of Kansas in Brown v. Atchison, 39 Kan. 37, 54, 7 Am. St. Rep. 515, 17 Pac. 475, to the effect that "where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void, in whole or in part, because of a want of power on the part of the corporation to make it, or to enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust and the contract is performed, in whole or in part, by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent

rendered in return, and these benefits are such as one party may lawfully render, and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party."

While quoting from this Kansas decision the court said also that the case was one where the plaintiffs were attempting "to invoke the equitable powers of the court to aid in the accomplishment of a purpose manifestly inequitable." The case at bar is an action at law, upon a contract to repay for money expended and the parties are required to be as honest in the one case as in the other. But the defendant is seeking to evade return of the money advanced and expended. The comment on justice found on page 832 of the case cited is applicable here.

It is conceded that the agreement was entered into in good faith and with no intent to evade the law. We are not dealing with an attempt to prevent an irregular deal being consummated, or an illegal agreement executed. We are dealing with a case where the city had something belonging to the county and seeks to retain though promising to return it. The agreement was completed, hence the cases cited by defendant are not in point.

The city was paving Villard and other streets and instead of charging its citizens and its taxpayers with the full amount of such improvement, as ordinarily it would be required to do, through the agency of the county received some $19,000 as a gift or bonus to the city, which sum the city used in its paving and a part of this gift the county advanced upon an agreement to repay. It was necessary for the county to advance this money in order that the city could make the improvement contemplated and could get the remainder of the money, and the city agreed to repay the county the advance money as soon as it received the money from the state and from the Federal government. The county advanced the money; the city received this $19,000 out of which it should have repaid this amount to the county and in equity and good conscience is bound to repay it. The complaint states a good cause of action and the demurrer should have been overruled. Whether the county can substantiate its complaint is a different matter and one which will be determined on the trial. The order of the district court is reversed with costs to the plaintiff.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON, and BIRDZELL, JJ., concur.