STATE ex STALEY v. BEUTLER et

Ohio Appeals, 2nd Dist, Darke Co

No 557. Decided May 5, 1939.

522

Hugh A. Staley, Pros. Atty., Greenville, for plaintiff-appellee.

Billingsley & Manix, Greenville; John S. Hankins, Greenville; Harvey F. Dershem, Greenville, Wm. D. Spidel, Greenville, for defendants-appellants.

## OPINION

By GEIGER, J.

The action was begun by the filing of a petition in the Court of Common Pleas of Darke County by the Prosecuting Attorney in which it is alleged that on the 7th day of January, 1935, H. V. Routzong, deceased, was the duly elected clerk-treasurer of the Gettysburg village school district and thereafter presented his bond which was accepted by the school board, being signed by Routzong, Henry C. Meyers and E. M. Reck in the sum of $1000.00; that Routzong was elected clerk of the board and ex officio treasurer of the school funds of Gettysburg school district; that the condition of the bond was that if said Routzong should faithfully perform his official duties and faithfully disburse all the school funds the obligation should be of no effect; otherwise to be in full force and effect.

It is further alleged that during the year 1935 Routzong, the clerk-treasurer, issued false and fraudulent warrants against the funds of the board of education, which were paid out of funds as set out in the petition, and that fur-

ther there was paid to him as clerk the sum of $9.00 which was never credited to the school fund, and that there is due from the defendants to the school board the sum of $197.93.

The allegations are also made as to the death, of Routzong and the appointment of Beutler as his administrator and the death of Myers and the appointment of Dershem as his administrator. Beutler as administrator of Routzong files an answer making certain formal admissions in reference to the appointment of Routzong, his death, the presentation and rejection of the claim against his estate; the death of Myers and the appointment of his administrator and denies all other allegations. Both Dershem, administrator of Myers, deceased, and E. M. Reck, the one living signer of the bond, filed what are substantially general denials, except that they admit the execution of the bond.

The cause was tried before a jury which returned a verdict in favor of the plaintiff for $188.93. Proper motions for new trial were made by all the parties, setting up alleged errors, all of which motions were overruled and final judgment entered, whereupon each defendant gave notice of appeal and the case was lodged in this court.

Sec. 286, et seq, GC, are drawn in question. §286 provides what the report of an examination made by the Auditor of State shall set forth and what proceedings may be taken thereunder. It also gives pertinent descriptions of what are public moneys, and what actions may be filed for the collection of the amounts found due by the Bureau. §286-1, GC provides that civil actions for the recovery of money may be heard and determined by any court of proper jurisdiction, and further provides that in any such action it shall be sufficient for the plaintiff to allege in the petition so much of the report of the Bureau of Inspection and Supervision of Public Offices as relates to the claim against the defendant therein, and that the amounts claimed against the defendant are unpaid, and it is further provided that it shall not be

necessary for such petition to separately state the causes of action.

"A certified copy of any portion thereof shall constitute prima facie evidence of the truth of the allegation of the petition."

Sec. 286-4, GC provides that in addition to any liability of any officer for which he may be sued, "the surety or sureties on any official bond given by such officer or employee shall be liable on such bond up to the amount named therein." Said surety may be sued in the same action with the principal and all the provisions of §286, et seq., GC shall apply with equal force to surety or sureties as to the principal.

These sections provide for a summary trial of the action against both the principal and the sureties for the money claimed to be due from the principal.

In the trial of the case the State introduced the report of the special examiner of the Gettysburg school district of Darke County, showing in detail the basis of the finding for the recovery against the administrator of the deceased official. Objections were made to the introduction of this document on the ground that it did not appear to be executed by the proper officials or properly certified. The court admitted the document and in this we think there was no error. After its admission the State rested and thereupon the several defendants made motions for instructed verdicts which were overruled. Thereupon the defendants' bondsmen, or their representatives, presented the evidence of the present clerk of the board of education which was largely confined to the point that the minutes of the school board showed that the claims upon which vouchers were issued were presented to regular sessions of the board and allowed. Thereupon the defendants rested and the State introduced two witnesses through whose testimony it was sought to show that shortly prior to his death the clerk of the board made certain admissions as to the method in which he had handled the funds and issued vouchers for the payment of claims which were not due from the school district but were issued in payment of bills against him for transactions in connection with a drug store of which he was proprietor in the village of Gettysburg.

One witness further testified that as one of the examiners for the State Auditor she made certain investigations in reference to the bills for which vouchers were presented and her testimony was offered to the effect that she had gained information through correspondence with the companies listed, which indicated that the invoices were for goods sent to the clerk in his private capacity as proprietor of the small store. This evidence was objected to and objections sustained on the ground that the testimony of the witness would be largely hearsay and not competent. Counsel for defendants objected to all the evidence given or offered touching the alleged confession of the official as not being competent against them as bondsmen. During the introduction of the testimony the Court frequently instructed the jury that the evidence was to be taken only as against Herschel v Routzong and in no sense to be applied to the liability of the sureties and that it is for no other purpose.

In the Court's general charge he instructed the jury as follows:

"The court wants to carefully call your attention to the evidence concerning certain admissions of Routzong. These purported admissions if made were made after the transaction complained of was completed; there is no evidence to the contrary on that point. That being the situation you are instructed that such admissions on the part of Routzong if so made cannot and must not be taken by you as any evidence against the sureties, Myers and Reck, but only as against the decedent Routzong himself."

"If you find that the evidence is sufficient to establish the claim against

Routzong and not against the other two, then your verdict will be against Routzong alone. But if you find that the evidence is sufficient to establish the claim against all three then your verdict will find against the defendants generally."

The Court was most careful and circumspect in its continual admonition to the jury that admissions made by Routzong could not be considered as testimony against the bondsmen, being guided in this by the case of **American Guaranty Company** v **McNiece, 111 Oh St 532,** where it is held,

"The sureties on a bond of an official conditioned upon the faithful performance of his duties, are liable to all persons lawfully injured by the nonfeasance, misfeasance or malfeasance perpetrated by such officer either by virtue of his office or under color of his office."

It is disclosed on page 548 that it was urged as a ground of reversal to the prejudice of the surety companies that evidence was permitted of admissions made after the act. It is stated:

"Evidence of admission was competent as against the parties making the admissions and it would have been error for the court to have wholly excluded it. It was incompetent against the surety companies."

The Court in that case said:

"No admission made by Campbell or Calvert after the commission of the acts complained of in the amended petition, if you find that they or either of them made such admissions, can bind the defendant surety companies or either of them."

As to this charge, Robinson, J., delivering the opinion, observes:

"The court could not have done more except to have cautioned the jury at the time the evidence was introduced

that it could not bind the surety companies. We think that any error in that respect was cured by the charge before argument."

In the case at bar the Court followed the direct and implied admonition in that it cautioned the jury at the time the evidence was introduced that it could not bind the sureties, and further instructed the jury correctly in the general charge. No complaint is made by counsel that the charge of the court was erroneous, but the complaint is that the jury failed to follow the instruction of the court.

This brings forward the question as to whether or not there was sufficient evidence to support the verdict against the bondsmen if the jury excluded the evidence as to the admissions made by the officer. As before stated, the statute provides that in any action similar to the one at hand it shall be sufficient for the plaintiff to allege in the petition so much of the report as relates to the claim against the defendant and that a certified copy of any portion thereof shall constitute **prima facie** evidence of the truth of the allegations of the petiton.

Sec. 286-4 GC provides that all the provisions of §286 shall apply with equal force to the surety or sureties as to the principal. We therefore have the situation of a report of the Bureau of Inspection which is introduced properly against not only the officer but the sureties. It is **prima facie** evidence of the truth of the matter presented. It does not make a **prima facie** case against the defendant, but is **prima facie** evidence which may be rebutted. The only evidence introduced by the defendants was that of the present clerk who gave certain testimony as to the state of the record. The most that was sought to be proved was that the board regularly passed upon and ordered the clerk to pay the bills which are enumerated in the report of the inspector. In our view, even though it may have been established that the board of education regularly passed the

bills, which fact is disputed by the former superintendent who appeared as a witness in rebuttal, that such fact would not relieve either the officer or the bondsmen from liability. If the report sets forth that any public money has been illegally expended or that any public money collected has not been accounted for, or if any public property has been converted, civil actions may be brought for the recovery of the same. If the clerk, who by virtue of his office was also treasurer, represented to the board that the articles for the payment of which the board's approval was sought, were purchased for the benefit of the school board, when as a matter of fact the vouchers were being issued to pay for property purchased by him in his private capacity, the public money was thereby illegally expended.

This case has led us to examine many decisions, some of which are: State ex v Smith, 97 Oh St 272, wherein it was held that the sections of the General Code creating the Bureau of Inspection and Supervision of Public Offices and providing for a short form of pleading are constitutional and should be liberally construed to effect their clear purpose and are comprehensive enough to warrant actions against public officers, former public officers or private persons.

In the case of Graves v Board of Education 24 Oh Ap 428, it is held that the petition by the board of education to recover public money, alleging that the Bureau filed reports of an examination and setting out part of the report containing findings for recovery stated a cause of action under §§286 and 286-1, GC, requiring plaintiff to allege only so much of the report as relates to unpaid claim against the defendant. And further, under §286 GC, providing that the copy of the report shall constitute prima facie evidence of the truth of the allegations it is competent evidence in action to recover public money and the admission of the report was not prejudical.

In the case of Heiser Bros. v Cleveland 44 Oh Ap 560, it is held that in an action instituted under the provisions of §274, et seq, GC when a certified copy of any portion of the finding made by the examiner is offered in evidence as provided by §286-1 GC, such report is competent in so far as it sets forth finding of facts. Arguments and deductions and conclusions are incompetent. In an action so instituted it is not improper to join as parties defendant, a vendor of supplies of a city, the purchasing agent and a surety on the bond of such agent, when the bond has been given to guarantee the faithful performance of the duties as such purchasing agent.

See also Heiser Bros et v City of Cleveland, 126 Oh St 625, wherein the last above mentioned case is interestingly discussed.

Even though we might be of the opinion (which we are not) that the testimony of the present clerk in reference to the action of the school board in approving the accounts, tended in any way to relieve the officer or his bondsmen from the claim of the State that the public money has been illegally expended, yet the matter was properly submitted to the jury and the jury by its verdict found that no evidence had been introduced sufficient to overcome the prima facie evidence of the truth of the allegation of the petition as constituted by the filing of the report.

We find no error in the judgment of the court below. Judgment affirmed. Cause remanded.

HORNBECK, PJ. & BARNES, J, concur.