**BETHESDA (Village), Plaintiff, v. MALLONEE, Defendant.**

Common Pleas Court, Belmont County.

No. 15492.   Decided June 23, 1955.

**OPINION**

By BELT, J.:

Prior to the institution of this action by the Village of Bethesda, the Bureau of Inspection and Supervision of Public Offices made a finding for recovery against the Defendant herein.

The amended petition alleges, in substance, that this action was caused to be initiated by Walter L. Kildow, at that time Mayor of said Village, and under and by virtue of a certified copy of the report of examination of the records of said Village by the Bureau of Inspection and Supervision of Public Offices; that the Defendant was, during the year 1947 and up to the 10th day of February, 1948, a duly elected, qualified and acting member of the Council of said Village; that while acting as a member of said Council, on May 27, 1947, he offered a motion with respect to buying property to be used as a building site for the Fire Department of said Village and on November 25th of the same year reported to Council that plans and specifications for a new fire house had been

approved by the State, and that in the month of January, 1948, while still acting as a member of Council, approved an invoice for advertisement for bids for said proposed building, and still later, while acting as a member of Council, submitted a bid to construct said fire house according to plans and specifications therefor in the sum of $7,598.00, which bid was accepted; that on the 10th day of February, 1948, Defendant resigned as a member of Council; that on the 14th day of June, 1948, Plaintiff and Defendant entered into a written contract for the construction of a fire building and station, by the terms of which Defendant was to furnish the materials and labor and construct said fire house in accordance with the plans and specifications for the sum of $8,000.00. Further terms of said contract were that $4,000.00 was to be paid when the building was under roof and the remaining $4,000.00 upon the completion of same. That on December 1, 1948, Plaintiff paid Defendant $4,000.00 and upon the completion of said building the remaining $4,000.00 was paid on the 15th day of August, 1949.

The certified copy of the finding of the Bureau of Inspection and Supervision of Public Offices, filed with the Mayor of said Village is as follows:

"A joint finding for recovery is hereby returned against Councilman C. C. Mallonee as the Contractor, C. R. Grimm as the Clerk and Grayce Dougherty, as Treasurer, and in favor of the Village Treasury in the amount of $4,000.00.

"A joint finding for recovery is hereby returned against Councilman C. C. Mallonee as the Contractor, Inza Jackson as the Clerk and Grayce Dougherty as the Treasurer, and in favor of the Village Treasury in the amount of $4,000.00."

It is further alleged that the Defendant has failed and refused to refund the said sum of $8,000.00. Wherefore Plaintiff prays judgment against the Defendant in said sum with interest and other relief.

The answer to the amended petition contains four defenses. The first defense denies generally all of the allegations of the petition not admitted to be true and alleges that the Defendant instead of making a profit suffered a loss in the construction of said building in the sum of $154.47.

As a second defense Defendant admits that he signed a written contract for the construction of said building, at which time he was not a member of said Council, and, furthermore, that he was advised by the City Solicitor that he had a legal right to enter into such contract; that on or about January 27, 1948, he submitted a bid in the sum of $7,598.00 and that no other bids were submitted; that he had never qualified as a member of Council in the year 1948 and that his said bid was never acted upon by Council and that no advertisement for bids was made after January 27, 1948, and that the alleged contract entered into between the parties on June 14, 1949, was not approved by Council; that he received $4,000.00 on December 1, 1948, and an additional $4,000.00 on August 15, 1949; that the cost of the construction of said building was $8,154.47, and that after the completion of said building Plaintiff went into possession and has since used the same as a fire house and Village

jail and is still in possession and using said building for the purposes aforesaid. Defendant then pleads estoppel.

As a third defense Defendant alleges the proceedings of Council approving the transaction, and as a fourth defense alleges that if Plaintiff will convey to him the building and real estate he will reimburse Plaintiff in the sum of $8,250.00, being the total sum spent by the Village for said building and the real estate upon which it stands and tenders to Plaintiff the said sum upon compliance by Plaintiff with said proposal.

After the disposal of various motions, Defendant filed an amended answer to the amended petition, alleging in substance the same matters as hereinbefore set forth.

Plaintiff filed a reply denying some of the affirmative defenses contained in the answer.

The cause was submitted to the Court on an agreed statement of facts, together with a copy of the contract between Plaintiff and Defendant for said construction work. The statement of facts consists of an abstract of the minutes of Council for its various meetings, the proposal of the Defendant for the construction of said building, the authorization of Council for the payments to the Defendant, as alleged, the approval of the City Solicitor of said contract and the fact that the building is now in use by said Village for the purposes intended. The contract by and between the parties sets out the fact that the Defendant agreed to construct said building for $8,000.00; that the Defendant was to furnish all the materials and labor and the agreement of the Village to pay for the same the said sum of $8,000.00. The contract is signed by the parties, attested by the Clerk of said Village and approved by the Solicitor as to form.

A number of statutes are germane to the inquiry and issues in this case, viz., §§117.10, 117.11, 733.78 and 2919.10 R. C. The first section, §117.10 R. C., provides for the report of examination and the action thereon and in substance provides, among other things, that if public moneys have been found to have been illegally expended, the officer receiving the report shall cause to be instituted a civil action in the proper court for recovery and it further provides that the Mayor of a Village shall employ legal counsel for such purpose; that no claim shall be abated or compromised either before or after the filing of a civil action without the consent of the Attorney General and that no judgment or final order shall be entered in any civil action commenced under said section until the entry is submitted to the Attorney General.

The next section, §117.11 R. C., provides for the jurisdiction of such actions and specifies what shall be contained in a petition, further providing that it shall not be necessary to separately state and number causes of action and that a certified copy of such report is prima facie evidence of the truth of the allegations of the petition.

Sec. 733.78 R. C., provides that no legislative officer shall have any interest in the expenditure of money on the part of a municipal corporation, and, §2919.10 R. C., provides that no officer of a municipal corporation or member of Council shall be interested in the profits of

a contract in work undertaken or prosecuted by such municipal corporation during the term for which he was elected or appointed, or for one year thereafter, and that whoever violates said sections shall be penalized.

The above-mentioned sections seem to provide the legal machinery for the adjudication of all cases arising in the State, or in any political subdivision thereof.

The Courts of this, and of other States, in considering such issues have reached one of two conclusions pertaining to recovery. One conclusion is found in a discussion of the case of **Wright v. Clark, 119 Oh St 462,** which holds, in substance, that an engineer of a city is an officer thereof and by reason of being an officer can not legally become interested in the expenditure of money by the corporation and that neither fraud, conspiracy or unreasonable profits are necessary elements in an action for recovery from such officer under the provisions of §733.78 **R. C.** In that case the engineer employed other city officials to do certain work in the improvement of streets and was also financially interested in the materials that were used for such improvement.

In the case of **State, ex rel. Smith, v. Maharry, 97 Oh St 272,** it is held that public property and public moneys constitute public trusts and that the sections of the statute under which an action for recovery must be brought should be liberally construed. The Court says in the opinion as follows:

". . . with certain qualifications, the legislature had the power to enact and prescribe that in criminal prosecutions certain facts, when duly established, shall be held to be presumptive or prima facie evidence of guilt."

Commenting on the sections under which this action was brought, the Court further says:

"In this case the statute merely provides that 'A certified copy of any portion of the report of the bureau of public accounting as referred to in the petition shall constitute prima facie evidence of the truth of the allegations of the petition.' It does not provide that this, the prima facie evidence of the indebtedness of the defendant to the political subdivision in whose behalf suit is brought, shall be a prima facie case against the defendant."

In the case of **L. Hommel & Co. v. Woodsfield, 122 Oh St,** after holding that the statutes limiting the powers of a municipality to purchase supplies and materials without bidding are enacted for the benefit of the public, says on **page 155** of the opinion as follows:

"This court will not relax the protection which such statutes throw around the public treasury. It is true that a modification in the strictness of this doctrine was made in **State, ex rel. Hunt v. Fronizer, 77 Oh St 7.** In that case, it was held that there could be no recovery back of money paid upon a county commissioners' bridge contract, fully executed, but rendered void because of the lack of the necessary statutory certificate by the county auditor, where there was no claim of unfairness, fraud, or extortion, and no claim of effort to put the contractor in statu quo by return of the bridge, or otherwise. The court said that this rule

rested upon the principle of common honesty, and that the county should not be permitted to retain both the consideration and the bridge. However, the Fronizer case, which is still the law in this state, cannot be extended beyond the specific doctrine which it announces."

The above-cited case was an attempt by the Plaintiff to collect for goods sold and delivered to the Village under a contract held to be void.

The Courts are uniform in holding that a contractor under such situations can not recover. That, however, is not the situation in the case at bar.

The Court is of the opinion that the statutes in question are simply pronouncements of the common law rule with the single exception that the statutes provide that proof of the finding made by the Bureau of Inspection and Supervision shall constitute a prima facie case within the limitations set forth in the Maharry case supra.

Our next inquiry should be, what is the status of the law pertaining to the instant case? It will be noted that where a recovery by the municipality was had in the cases thus far mentioned, the contracts in question were not for the building or erection of a particular item, that is to say, in the case of Wright v. Clark, supra, gravel and other road materials were furnished for the improvement of various streets. There was nothing tangible that could have been returned by the village to the contractor upon recovery of the money paid. Whereas, in the cases about to be cited no recovery back was allowed unless the municipality gave up to the contractor the specific thing that was erected or constructed, thus adopting the equitable principle that the Court would grant no relief as among wrongdoers and would leave them in the position in which they had placed themselves, or that, as a matter of common justice a municipality could not recover under a void contract unless they returned to the contractor the specific thing in which he had placed his time and materials.

It is stated in the Woodsfield case, supra, as follows:

"This court will not relax the protection which such statutes throw around the public treasury. It is true that a modification of the strictness of this doctrine was made in State, ex rel. Hunt, Pros. Atty., v. Fronizer, 77 Oh St 7. In that case, it was held that there could be no recovery back of money paid upon a county commissioners' bridge contract, fully executed, but rendered void because of the lack of the necessary statutory certificate by the county auditor, where there was no claim of unfairness, fraud, or extortion, and no claim of effort to put the contractor in statu quo by return of the bridge, or otherwise."

Holding that there can be no recovery back by the political subdivision without an offer to return the specific thing are the cases of State, ex rel. Staley, v. Beutler, an Appellate case reported in 29 Abs 521. This was a Board of Education case and the opinion seems to have been carefully considered.

In the case of Buchanan Bridge Co. v. Campbell et al, 60 Oh St 406, in which case the contract was within the power of the County Commissioners but due to irregularities was unenforceable and void, no recovery could be had against the County for the value of the

bridge, but the Court further held that courts will leave the parties to such unlawful transactions where they have placed themselves and will refuse to grant relief to either party.

The Court held in the same manner in the case of **Markley v. Village of Mineral City, 58 Oh St 430,** where the contract was fully executed but was void because of the incapacity of the municipality to acquire land for the purposes for which such land was acquired and that a deed purporting to convey such land was without legal effect. The Court again invoked the principles of equity in denying relief.

The Court of Appeals of the 7th District, sitting by assignment in Cuyahoga County, in the case of Herzig et al. v. Hunkin Conkey Const. Co., reported in 101 N. E. (2d) at page 255, held that such action could not be maintained in the absence of an allegation that Plaintiffs had put, offered to put, or were ready to put Defendant Corporation in statu quo. There is no such claim in this case.

The case of **State v. Fronizer, 77 Oh St 7,** holds that the section of the statute referred to, which authorizes a prosecuting attorney to bring action to recover back money of the county which has been misapplied, or illegally drawn from the county treasury, does not authorize the recovery back of money paid on a county commissioners' bridge contract fully executed but rendered void because of the lack, through inadvertence, of a certificate by the county auditor that the money is in the treasury to the credit of the fund, or has been levied and is in process of collection, there being no claim of unfairness or fraud in the making, or fraud or extortion in the execution of such contract for such work, nor any claim of effort to put the contractor in statu quo by a return of the bridge or otherwise, the same having been accepted by the board of commissioners and incorporated as part of the public highway.

There is no lack of authority outside of Ohio on this proposition. It will be found that many states, including Arkansas, California, Idaho, Illinois, Iowa, Kentucky, Michigan, Minnesota, Missouri, Nebraska, New York, South Dakota, Tennessee and Texas, have judicially announced the same principles borrowed from equity. These various decisions are enumerated in notes found in the annotation to the case of Miller v. McKinnon, reported in 140 A. L. R. at page 570, and particularly the case enumerated on page 587 and the following pages. A brief reference will be made to some of these cases.

In the case of Henderson v. Sibley County, a Minnesota case, reported in 11 N. W. 91, the Court said, after holding that the contract was ultra vires, as follows:

"A just regard for the public welfare will not permit the court to compel the performance of a contract like the one in question. It does not follow, however, that restitution should not be made of the money paid in pursuance of it. The question respects the rights of the citizens of the borough, and not alone the acts of its public officials. The people of the borough are to be protected against the unauthorized acts of its public officers when it can be done without injustice to others, and no principle of public policy will be violated by relieving them, as far as may be just, from the consequences of such unauthorized acts. This

money belonging rightfully to the borough, and having been actually appropriated and used by the county for its benefit, an obligation, both moral and legal, rests upon the county to make restitution."

In the Missouri case of Sehell City v. Rumsey Mfg. Co., 39 Mo. App. 264, the Court said, among other things, as follows:

"We must hold that the plaintiff cannot be permitted to recover back the money so paid on account of this engine. The transaction, as determined by the courts, was either a voluntary payment of money on an executed illegal contract or was a legal purchase of the engine by the village authorities, and voluntary payment thereon by the plaintiff village. In either event, the village cannot now force defendant to return the money."

"Plaintiff, with full knowledge of all the facts, though mistaken as to the law, paid the money now sought to be recovered. The well-established doctrine is that money voluntarily paid under a mistake of the law, but with a full knowledge of the facts, and without fraud, cannot be recovered."

See also Pillager v. Hewett (Minnesota), 107 N. W. 815; and Tobin v. Sundance, 45 Wyo. 219, 17 P. (2d) 666.

In the case of Frisch v. St. Charles, 167 Minn. 171, 208 N. W. 650, in reference to a conveyance of land to a municipality, the Court in the opinion said:

"But where property has changed hands under such an agreement and has been paid for, neither law nor equity will ordinarily compel a restitution of the purchase price."

In the case of Ellefson v. Smith, 182 Wis. 398, 196 N. W. 834, in an action by a taxpayer to recover back from a contractor the amount paid the latter on a contract for the construction of a reservoir, where the contract was let without competitive bidding, contrary to law, the Court denied recovery and said:

"The city had the power to build a reservoir. The reservoir was, and is, a public necessity. It was built at a fair price. It has been accepted by the city and is in use as a necessary part of the water system."

"The officials profited not at all by the contract, nor does it appear that the city suffered in any way by the failure of the officials to comply with conditions precedent to letting a valid contract."

The Court further said:

"No one has been injured in his person or property rights."

Recovery was denied.

Many more authorities may be cited and the authorities to the contrary are at an irreducible minimum.

It is questionable in this case as to whether any statutory law was violated other than the provision of one year referred to in the statutory enactment. The Defendant was not a member of Council when the contract was entered into and the plaintiff Village evidently received full value for the money expended and recovery is therefore denied.

Counsel, by brief, urges that the introduction of the finding makes a prima facie case and that then the burden is shifted to the Defendant

to establish his defense and that the Defendant therefore must show by a preponderance of the evidence that he would be entitled to recover if the contract price had not been paid. Counsel is in error on this proposition. The burden of proof never shifts. If a prima facie case is made, the burden of evidence is then on the Defendant to counterbalance such evidence by evidence of equal weight but the burden of proof always remains upon the plaintiff and there is no such doctrine that there may be a recovery of an amount paid even though the contract is found to be illegal due to some failure to follow the law, if, as a matter of law, it was within the power of the municipality to enter into such contract. See Tompkins, Chamberlayne Trial Evidence, Page 168 and the following pages. The burden of evidence may shift from time to time during the course of the trial but the burden of proof never in any case shifts unless the defense is an affirmative one, when from the beginning the burden of proof is upon the Defendant as to such affirmative defense.

The finding and judgment of the Court is for the Defendant.